The Honorable Jim Hill State Senator 100 Center Nashville, Arkansas 71852-3821
Dear Senator Hill:
I am writing in response to your request for my opinion on a question submitted on behalf of Polk County Clerk Terri Harrison, who reports the following background:
 Many of the county clerks have a software program for accounts payable and payroll with the company Apprentice Information Systems (AIS). I think there are about 45 or 50 counties with this company. The clerks have a former users group and we meet a few times a year to discuss new programming or whatever. I serve as the chairperson of that group. AIS is in the process of changing their programming from a DOS based program to a windows based program. We have been told that once we receive the new software our checks for accounts payable and payroll will be printed on laser printers rather than dot matrix printers. Currently we use a dot matrix printer with continuous form 3-part checks. If we go to laser printers, the actual check would be printed from one tray and copies of the check would be printed from another tray. They would not be 3 part checks and would not be continuous form.[1] However, according to Arkansas Code 14-24-204 we are required to use checks that "are in triplicate snap out form." We have discussed this at our meetings and many of the clerks are concerned that if we go to a laser printer we would not be in compliance with the Arkansas Code.
Against this backdrop, you have posed a question I will paraphrase as follows:
 Are counties that use the Apprentice Information Systems ("AIS") program for accounts payable and payroll going to violate provisions of A.C.A. § 14-24-204 if they update to a Windows-based program utilizing laser printers that do not use the continuous form 3-part checks?
RESPONSE
In my opinion, such an upgrade would clearly be permissible if a county issues and records its checks pursuant to the procedures set forth at A.C.A. §§ 14-24-204(b) and — 205(b), which impose no requirement that the county use what you describe as "continuous form 3-part checks." However, if a county issues and records its checks pursuant to the procedures set forth at A.C.A. §14-24-204(a), which directs that a check channeled through the clerk be "in triplicate snap-out form," the upgraded AIS system you describe would appear to be in violation of the statute. Although the legislative history of A.C.A. § 14-24-204 reflects a loosening of the procedural strictures imposed upon counties relating to the issuance of checks to discharge county debts, the unambiguous requirements set forth at A.C.A. § 14-24-204(a) continue to apply to counties proceeding under that subsection, precluding any county operating under that subsection from upgrading its system of issuing checks from a DOS-based program to a Windows-based program using laser printers that do not produce "continuous" checks — i.e., checks with two copies physically attached to the original.
Section 14-24-204 of the Arkansas Code (Repl. 1998) provides in its entirety:
 (a)(1) It is the intent of this subchapter that, after a claim has been properly presented to a county court with a proper certification and itemization thereof, as provided by law, the county clerk may cause a check to be prepared in payment of the claim. This check must be accompanied by an attached certification from the clerk stating that the check is for payment of a valid claim against the county, properly presented and allowed, as provided by law, the check being presented to the county treasurer for his signature, such check being in triplicate snap-out form, allowing for the following information and distribution:
 (A) Original check, after being transmitted to the treasurer for his signature, will be delivered to the party presenting the claim to the treasurer;
 (B) Duplicate copy of the check, which will provide the printed certification thereon by the clerk to the treasurer and provide for the original signature of the clerk on the certification, will be maintained by the treasurer;
 (C) Triplicate copy of the check, and attached certification which is a part thereof, will be maintained by the clerk, with all supporting documentation for such payment being filed with this copy.
 (2) The checks shall be prenumbered and designed in such form that the specific appropriation applicable and particular fund affected out of which the check is to be paid is noted thereon.
 (b) In lieu of the provisions of this section pertaining to the issuance of a three-part check, if a county so chooses, the following provisions may apply:
 (1) Once the aforementioned claim procedures have been completed, the treasurer may cause a check to be prepared in payment of claims filed with the county court;
 (2) Each claim properly docketed and approved for payment by the county court shall be proper certification from the clerk to the treasurer that a valid claim exists;
 (3) The checks shall be prenumbered and so designed that the specific appropriation applicable, particular fund affected, and claim number shall be noted thereon.
(Emphases added.)
As reflected in the highlighted excerpts of this statute, the county has two options in issuing checks to discharge claims against the county. First, pursuant to subsection (a) of the statute, the county clerk may issue checks for the treasurer's signature "in triplicate snap-out form."[2] Secondly, pursuant to subsection (b) of the statute, as an alternative to "the issuance of a three-part check," once a claim has been properly approved by the county court, "the treasurer may cause a check to be prepared in payment of claims filed." Under subsection (a) of this statute, the clerk prepares the checks for the treasurer's signature; under subsection (b), the treasurer independently prepares and signs the checks. See generally
discussion in Ark. Ops. Att'y Gen. Nos. 2001-094 and 90-206.[3] Subsection (a) unequivocally requires that each check be issued in triplicate, with the clerk maintaining one copy of each check and the treasurer another. Subsection (b), which authorizes the direct issuance of "a check" to a claimant approved by the county court, distinguishes itself as only an alternative to the provision in section (a) "pertaining to the issuance of a three-part check." In counties proceeding under subsection (b), the treasurer supplies the county clerk with a copy of any "computer product" reflecting the issuance of a check.
The issue of duplicate checks is further explored in A.C.A. §14-24-205 (Repl. 1998), which provides in its entirety:
 (a) If a county should adopt the payment by check system, the county treasurer shall maintain a check disbursement record which shall be a book or file of the duplicate copies of checks issued by the treasurer, arranged in numerical sequence. This book or file shall provide a detailed check-by-check record of the disbursements from the various funds accounts maintained by the treasurer in a fund account book reflecting receipts and disbursements of the various funds.
 (b) In lieu of the provisions of this section pertaining to the requirement of the keeping of duplicate copies of the checks, if a county so chooses, the following provisions shall apply:
 (1) The treasurer shall maintain a check disbursement record which shall provide a detailed check-by-check record, in numerical sequence, of the disbursements from the various fund accounts so maintained;
 (2) For the purposes of this subsection, "check disbursement record" shall be a book or file similar to the warrant register previously maintained by the treasurer by § 14-24-110 [repealed], or, if the county utilizes computer equipment for check preparation, the computer product or check register showing the payee, specific appropriation, fund affected, check number, and claim number, the latter two (2) elements being in their respective numerical sequence;
 (3) The treasurer shall deliver to the county clerk a duplicate of the computer product or check register, which product shall be utilized for necessary posting to the claims docket.
(Emphasis added.)
In my opinion, A.C.A. §§ 14-24-204 and -205 clearly set forth two alternative methods for issuing checks to discharge county debt, one of which entails maintaining duplicate and triplicate copies of checks issued and the other of which does not. Under subsection (b) of both statutes, a county need not retain duplicate and triplicate copies of checks, meaning that any county proceeding under these subsections would be insulated from any objection that it had failed to generate checks "in triplicate snap-out form," given that this requirement applies only under subsection (a). The conversion of AIS software should consequently have no legal implications for these counties. However, with respect to counties operating under subsection (a), assuming, as your factual recitation clearly implies, that the term "snap-out form" means that the check and its copies are generated together and are initially physically conjoined, I believe it would contravene the statute to produce copies of the original check after the fact of its production.
I appreciate that there may appear to be some inconsistency arising from the fact that subsection (a) imposes significantly greater procedural restraints on counties in discharging their debts than does subsection (b).[4] However, the legislative history of A.C.A. § 14-24-204 clearly suggests that the General Assembly intended only to offer counties a less onerousalternative to the procedures in effect before the enactment of what is now codified as A.C.A. § 14-24-204(b). Subsection14-24-204(a) of the Code, which flatly requires that all county checks be prepared by the clerk "in triplicate snap-out form," was enacted pursuant to Acts 1975, No. 22, § 3. Subsection14-24-204(b), which sets forth the alternative procedure discussed above, was added by amendment pursuant to Acts 1981, No. 525, § 1. Subsection (b) marks a liberalization of the procedure for paying claims against the county, essentially permitting a county to remove the clerk from the process of reviewing and certifying the issuance of payment. In authorizing this change, the legislature removed the requirement that checks issue only "in triplicate snap out form." However — and this qualification is crucial — even in the act of amending the original statute to add subsection (b), the General Assembly acknowledged the ongoing availability of the more rigorous procedural requirements set forth in subsection (a). The following statutory language in subsection (b) — "In lieu of the provisions of this section pertaining to the issuance of a three-part check, if a county so chooses . . ." — clearly reflects a legislative intention to leave the provisions of subsection (a) available as a procedural option. In effect, then, the 1981 amendment of the statute did no more than present counties with a choice of rigorously monitoring the issuance of county checks or streamlining the procedure, presumably for purposes of efficiency. Accordingly, if a county has not opted to proceed under subsection (b), I believe it is obligated to observe the formalities set forth in subsection (a), including the requirement that any check be issued "in triplicate snap-out form."
In enacting Act 525 of 1981, as currently codified at A.C.A. §§14-24-204(b) and -205(b), the legislature in effect announced that requiring that checks be issued in "snap-out form" is not necessary to ensure that a county either efficiently issue checks or efficiently track its financial transactions. However, the legislature clearly preserved the option for a county to channel its checks through the clerk and to issue copies of those checks in accordance with A.C.A. § 14-24-204(a). It may be that in light of technological advancements, the "snap-out form" provision of A.C.A. § 14-24-204(a) is an anachronism best abandoned. However, this is a determination that only the legislature can make. In the meantime, I believe county clerks issuing checks pursuant to A.C.A. § 14-24-204(a) are bound by the express terms of the statute, which the upgraded AIS program as described would apparently violate.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
 MIKE BEEBE Attorney General
MB/JHD:cyh
[1] I assume that your use of the term "continuous form" is identical in meaning to the term "snap-out form" as used in A.C.A. § 14-24-204(a)(1) (Repl. 1998), meaning that the check and its two copies are literally attached when printed.
[2] I gather from your factual recitation that documents in ""snap-out form" are unique to the dot matrix printing system currently used by the counties that have contracted with AIS. I further gather that the switch to a laser printing system in conjunction with the upgraded AIS software would necessarily entail the production of checks in something other than "snap-out form," thus raising your concern over compliance with the statute.
[3] As my predecessor noted in Opinion No. 2001-094, whereas the clerk is automatically authorized by statute to issue checks for the treasurer's signature pursuant to A.C.A. § 14-24-204(a), only by appropriate action by the quorum court can a county shift to the treasurer responsibility to perform this function. Pursuant to A.C.A. § 14-24-203 (Repl. 1998), the county court, upon joint petition of the county clerk and the county treasurer, is also required to approve any such shift of authority.
[4] The requirement that the clerk certify the validity of the claim before presenting the check to the treasurer represents one procedural restriction that does not apply in subsection (b), as do the requirements that copies of checks be maintained and that these copies be initially generated as components of a "three-part check."